The People of Puerto Rico, Plaintiff and Appellee, *v.* Diego E. Zalduondo Fontánez, Defendant and Appellant.

No. CR-63-15.      Decided September 30, 1963.

*Mario Báez García* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

■ In *People* v. *Monroig,* 87 P.R.R. 622 (1963), we said that where the result of the analysis of the blood sample taken on a person charged with operating a motor vehicle under the influence of intoxicating liquor shows the presence of fifteen hundredths of one percent, or more, by weight of alcohol, such person is bound to overcome the effect of the presumption referred to in subd. (b)(3) of § 5-801 of the Vehicle and Traffic Law of Puerto Rico, No. 141 of July 20, 1960, 9 L.P.R.A. § 1041, and if he fails to do so, the evidence on the result of the analysis is sufficient to support the conviction. In the same sense, *People* v. *Díaz,* Per Curiam decided September 30, 1963; *People* v. *Riego,* 87 P.R.R. 554 (1963). Hence, the importance in the present case of the error assigned to the trial court in refusing to order the verification analysis of the third sample in view of the discrepancy between the official analysis—which showed a result of 20/100 by weight of alcohol—and the private analysis made at the request of the accused, the result of which was 14/100 by weight of alcohol.

■ The evidence introduced by the district attorney on the conduct and condition of appellant established without doubt the presence of alcoholic breath, but this fact would not be sufficient by itself to hold that the offense charged was committed. Furthermore, the testimonies of the prosecution witnesses are of an essentially exculpatory nature. Dr. José M. Díaz Pérez, who took the urine samples, testified that with the exception of the smell of liquor emitted by defendant—which he termed as fair—he did not present any other sign of intoxication, for he did not observe dila-

tion of the pupils, defendant talked coherently, his locomotive reflexes were steady, and his conduct was not antisocial. José Espola, owner of another vehicle with which appellant's car collided, testified that he only noticed that Zalduondo was a little nervous and difficult "with the nervousness of the crash," but that he did not perceive the smell of liquor. The cyclist of the Transit Division of the Commonwealth Police corroborated that the defendant was a little nervous, though not upset, smelled of liquor and his eyes were red. In connection with the latter particular, another peace officer who was at headquarters asserted in similar terms that defendant's eyes were red, but when he was questioned by the defense he said: "How do defendant's eyes look now, at this moment?—To me he looks the same.—That is, red also?—Exactly.—So his eyes at this moment look the same as you saw them that day at headquarters?—More or less the same."

These facts stand out better under the circumstances of exception which we considered in *People* v. *Galleti Rodríguez*, 88 P.R.R. 275 (1963). The doctrine on the matter which we summed up in *People* v. *Vélez Ruiz, ante*, p. 51, and its predecessors *People* v. *López Rodríguez*, 88 P.R.R. 459 (1963); *People* v. *De Jesús Marrero*, 88 P.R.R. 150 (1963); *People* v. *Gregory*, Per Curiam decided March 21, 1963; *People* v. *Comas*, 87 P.R.R. 640 (1963); *People* v. *Soto*, 87 P.R.R. 653 (1963); *People* v. *Riego, supra*; *People* v. *Quiles*, 87 P.R.R. 464 (1963), and *People* v. *Ordein*, 86 P.R.R. 458 (1962), are not applicable to it.

It may be asserted that the only evidence on which appellant's conviction rests is the result of the analysis of the first sample. It is necessary, therefore, to examine the facts relating to defendant's request for a verification analysis. The urine samples were taken on April 22, 1962; the analysis of the first sample was made by the Department of Health on May 2; the information was filed nine days later, on May 11;

on June 29 defendant filed a motion alleging that the sample delivered to him had been analyzed by a chemical engineer— the report is dated May 24—and that since it differed from the findings of the official analysis, requested that a verification test of the third sample be ordered, and moved accordingly for a continuance of the trial which had been set for July 3 and waived his right to a speedy trial. From the minutes of the hearing held on the latter date it appears that the motion was argued—it does not appear whether evidence was heard on the matter—and at the foot of the motion Judge Ramos Vázquez issued his order in the following terms: "Motion denied on the ground that it is untimely." The hearing was continued to July 20. Defendant again requested that the third sample be analyzed and an identical order was issued. The trial was set for August 6 because of the absence of a prosecution witness whose testimony was essential. The hearing was finally held on this date and the defense attorney informed the court at the opening—then presided over by Judge Archilla Guenard—that he objected to the presentation of evidence on the findings of the analysis of the first sample since the verification analysis had not been ordered. The trial judge stated that this question could not be raised anew, since the same had been decided adversely to defendant by another judge of like category.

Section 5-803(f) of the Vehicle and Traffic Law, 9 L.P.R.A. § 1043(f), reads as follows:

"All blood smears or urine samples shall be divided into three portions: One shall be delivered to the person arrested so that he may have it analyzed by a chemist of his choice, if he so desires, and the other two shall be kept for the use of the Department of Health; one to be used in the chemical analysis required under this section, and the other to be kept for analysis only by direction of the court in case of discrepancy between the official analysis and the analysis privately made by order of the defendant."

The corresponding provision, § 7 of Regulations No. 30, approved by the Secretary of Health on September 29, 1960, 9 R.&R.P.R. § 1043–7, in its pertinent part merely establishes that "The second vial of each sample received shall be preserved under refrigeration as it arrives and duly identified, to be analyzed only under instructions of the court in case there is discrepancy between the official analysis and the analysis made privately under the defendant's instructions."

From the provisions copied above it does not appear that a specific term has been fixed for requesting a verification analysis.[1] It therefore contrasts with existing regulations on the verification analysis of samples of milk and other nonperishable food products, in connection with which § 11 of Regulations No. 12 of the Secretary of Health, promulgated on November 9, 1944, as amended by Regulations No. 26 of April 1, 1953, 24 R.&R.P.R. § 730–11,[2] read as follows:

"In the case of milk adulteration, the verifying analysis, if so requested by the interested party, shall be performed within a term of 10 days from the time that the person, in whose name the sample of milk was collected, is duly notified of the adulteration; provided, that, in meritorious cases, and if good reasons are presented, this period can be extended for 5 additional days. Verifying analysis shall never be performed after 15 days of the notification of the adulteration or in the case that the milk is acid.

"The term for verifying analysis for nonperishable food products shall be 20 days from the time that the adulteration notification is presented to the interested person. But this term

---

[1] The former Regulations No. 27 of the Secretary of Health, approved November 15, 1954, relative to blood and urine sampling, did not fix any term either.

[2] As to milk samples, see also § 116 of Regulations No. 96, approved by the Insular Board of Health on June 1, 1934, 24 R.&R.P.R. § 790–116. Cf. § XI of the Racing Regulations approved February 23, 1962, especially § 1114.

can be extended for 10 additional days provided the above-mentioned conditions prevail."

■ Considering the evidentiary effect of the presumptions established by the Act in relation to the findings of the analyses of the samples, and in view of the possibility that there may exist error in the analyses, it is easy to understand that the legislative purpose in incorporating the analysis of the third sample was to guarantee to the citizen an opportunity to verify the correctness of the findings whenever there is discrepancy between the analyses made. In order to do so, it is necessary to establish the existence of discrepancy between the official analysis and the analysis privately made upon instructions of defendant, according to our ruling in *People* v. *Cruz Rivera*, 88 P.R.R. 321 (1963). It is not a mere additional opportunity given to defendant, as alleged by the Solicitor General in referring to a phrase of our opinion in *Cruz, supra,* particularly if we consider that the request for verification entails the waiver of the challenge of the genuineness of the sample and of the regularity of the sampling procedure, *People* v. *Díaz, supra.* We therefore hold that the court is bound to order the verification analysis whenever defendant so requests after the existence of discrepancy is established.

■■ We have not overlooked the possibility that the third sample which is kept in the laboratory of the Department of Health may spoil or become useless, either because of the time elapsed since the taking or because of any other factor which the chemists are bound to explain. If such were the case, this fact may be established before the court and could constitute reasonable justification for not making the verification analysis.[3] We must not forget that the commis-

---

[3] In addition to the literature cited in *People* v. *Superior Court,* 84 P.R.R. 378 (1962)., relative to analyses for determining the degree of alcoholic intoxication, see Gerber, *Practical Use of Results of Bio-*

sion of the offense may be established by evidence independent of the findings of the analyses. *People* v. *Cruz Rivera, supra; People* v. *De Jesús Marrero, supra; People* v. *Soto, supra; People* v. *Quiles, supra; People* v. *Superior Court,* 84 P.R.R. 378 (1962); *People* v. *Cabrera,* 84 P.R.R. 94 (1961).

■ ■ ·Although we have recognized defendant's right to a verification analysis, the request therefor must be presented diligently and sufficiently in advance of the date set for the trial. *Cf. People* v. *Díaz,* 63 P.R.R. 948 (1944), and *People* v. *De Jesús,* 63 P.R.R. 706 (1944), in connection with motions for dismissal; Rule 234 of the Rules of Criminal Procedure of 1963, on motion for suppression of evidence. This would prevent it from becoming an escape for procuring the continuance of the hearing. Defendant would be bound to state the circumstances which prevented him from requesting it prior to the date of the hearing, if that were the case.

■ In the instant case the trial court denied defendant's request for the verification analysis made four days prior to the hearing. It alleged as ground that it was belated. Yet, since the trial was continued to July 20[4] and again to August 6,[5] the lack of diligence which defendant might have incurred in waiting more than 30 days to request the analysis of the third sample became academic.

■ Considering all the concurring circumstances herein, particularly that the only evidence to support the conviction

---

*chemical Tests for Alcohol,* 47 A.B.A.J. 477 (1961), and Note, *Chemical Tests for Intoxication: A Legal, Medical and Constitutional Survey,* 37 N.D.L. Rev. 212–260 (1961).

[4] It is not stated at the request of which of the parties the continuance was granted. Appellant alleges in his brief that it was at the request of the district attorney, and it so seems to appear from the minutes since it is said therein that the court ordered that witness José Espola and the chemist be summoned.

[5] The continuance to this date was procured by the district attorney because of the absence of one of his key witnesses.

is the findings of the first analysis since, as already stated, the testimonies of the witnesses on the conduct and state of defendant are of exculpatory nature, the refusal to order the analysis of the third sample was highly prejudicial.

The judgment rendered by the Superior Court, Mayagüez Part, on August 6, 1962, will be reversed and defendant acquitted.

